All right, Mr. Hawkins. Yes, sir. Good morning, Your Honors. My name is Scott Hawkins, and I represent the appellant Bradley Smith. We are here on a question that this Court kind of addressed about 18 months ago, which is, is Mr. Bradley Smith's claim barred by Louisiana's doctrine of res judicata? The first issue that I'd like to address with the Court is why would we be here had Judge Kelly not made certain statements during the underlying trial? It seems like the District Court, and in fact this Court, has cited Judge Kelly's statements as a basis for why at least res judicata would be considered. In the absence of those statements, an analysis of the pleadings in this case and the facts of this case does not lead to the conclusion that res judicata applies. In fact, it leads to the exact opposite conclusion. I mean, do you agree that if the insured was entitled to, rather was not entitled to a defense, then he has no cause of action for reasonably failing to settle? No. And the simple reason is this Court's jurisprudence. This Court has ruled a number of times that the duty to defend and the duty to indemnify are separate and independent duties subject to separate and independent legal analysis. The duty to defend is a snapshot in time. Under Louisiana law, which is, of course, adopted by this Court because of the Erie doctrine, one looks at the petition as it's filed, except in the facts that are pled in that petition, and the policy of insurance, and that policy of insurance is then analyzed with those facts. But isn't that what the Louisiana court, Robin v. Allstate, the Court of Appeals in the Third Circuit of Louisiana said? Didn't it say that? That if Allstate didn't know Mrs. Robin a duty to defend, therefore it didn't order her a duty to settle. Well, in that particular case, there is a difference. We have a legal finding that the policy, in fact, did provide coverage. The jury in this case was asked, again, I don't know the specifics of that insurance policy. This insurance policy required a dual showing for the intentional tort exclusion to apply. It required that, one, that the act be proved intentional and that the actor, Mr. Babin, subjectively intend the harm. The jury very clearly found that he did not subjectively intend the harm. That was the entire basis of Shelter's exclusion. In fact, we had brought an exhibit for the court today, which is a final judgment, which conveniently has incorporated the jury interrogatories, and the jury was specifically asked, do you believe that Mr. Babin subjectively intended this harm, and the jury returned a unanimous no. At that point, coverage was triggered. In fact, Shelter recognized that coverage was triggered because Mr. Morrow stood up in court and said, we are withdrawing our coverage defense. The only thing we're going to argue today is duty to defend. Subsequent to that, they took an appeal to the Louisiana First Circuit, and they tried to argue the very factual basis of that finding of the jury, and the First Circuit agreed with our position that you withdrew that. There's a finding of fact, so not only is the finding of fact not erroneous, but because you withdrew it, it's not appealable, and they agreed, and they dismissed that. Well, you're absolutely right. I mean, Louisiana law is clear that the duty to defend is viewed differently than the obligation to indemnify. But the question is, if you have no duty to defend, then how can you have a reasonable duty to settle? Because the duty to settle is part of the duty to indemnify. Well, see, now that's where this case – I mean, the language in the case is the law recognizes that the insurer's obligation to exercise good faith in defending the insurer also includes a duty to settle within policy limits if reasonable. So – and that's what the treatise is saying. I mean, the Louisiana work on insurance says almost exactly that. Well, again, the issue, Your Honor, is what does the applicable policy say, given the snapshot in time? The facts of this case are a little bit odd in as much as Shelter had put forward a position that was contrary to their own insured position. The insured said, I didn't hit Mr. Smith. That was his position throughout trial and continuing appeal. Shelter said, we are going to totally disregard what you say and accept as true the allegation made in plaintiff's original petition and disregard the allegations made in plaintiff's amending petition and say you did it intentionally. So Shelter was directly adverse to their insured. And while the Robbins case is a very limited application, if you look at the broad scope of the duty that is imposed under 1973A, every single court in Louisiana has adopted the phrase that the insurance company must act as the champion of their insured. All of the doubts must be resolved in the favor of the insured. And in this particular case, Shelter did not do that. But isn't it logical that the obligation to exercise reasonable care to settle a case is part of the duty to defend? I mean, and that seemed to be what the case is saying. No, because if that were true, an insurance company who took the duty to defend would almost always be saying I'm going to have the obligation to indemnify you, even though I may win on some subsequent exclusion that's in my policy. And in this particular case, there was a choice made, a tactical decision made, to not defend on a very limited set of facts which were legally incorrect. Well, they based it on the allegations in the petition. No, they did not, and that's the problem. The allegation in the petition was the act was intentional, and the policy provision did not require the exclusion of an intentional act. And, in fact, we also included a copy of the deposition of the senior claims adjuster, who's also the senior attorney at Shelter, where she admits I misinterpreted this policy. I did not understand Louisiana law. I guess the point is that's what the district court found, was that based on the allegations of the complaint, the insurer had no duty to defend. And so under issue preclusion, why doesn't that bar your claim? If the duty to reasonably settle is encompassed within the duty to defend. Well, again, Your Honor, I don't believe that the Louisiana Supreme Court has ever said that the duty to settle is part of the duty to defend. I understand the Robin case, but all of the broad scope of the jurisprudence in Louisiana on this issue is that the insurance company is required to act as the championing of the insured. And, in fact, there's been almost an incorrect application of the legal standard. Throughout this entire process, Mr. Smith has had to fight the idea that we need to show arbitrary, capricious, and bad-faith conduct. That is not the case. If this Court reads 1973, you will see that as there are delineated acts under the B section, and only B-5 and B-6 have the arbitrary, capricious language. So, for instance, if you read what kind of a Bible treatise in Louisiana insurance law, that's McKenzie and Johnson, they say, Louisiana courts consider the same set of factors in determining whether an insurer violates duty to defend and duty to compromise. So, I mean, if the Court decided that there was no duty to defend, then why doesn't this point us to say that the duty to compromise was not owed either? One, because I believe that the treatise is not controlling law. Secondly, it was written before the seminal case of Kelly v. State Farm. Kelly v. State Farm pushed the hard reset button when it came to 1973 claims. There was a misunderstanding in the bar in general, and the Supreme Court explained, and, of course, that was on certification from this Court, that that's what we were doing. We were misinterpreting 1973. And the issue with that particular case was whether the insurance company was required to receive a firm written demand from the plaintiff before they had an obligation to settle, and that's how it was always interpreted for 20, 30 years. And the Supreme Court said, no, that's not the case, and it's never been the case. And that treatise was written before that decision was made. Kelly changed the entire outlook of 1973. The issue that we're here for today is res judicata. Res judicata basically asks one pertinent question. Did the cause of action arise out of the same transaction and occurrence of the principal litigation? In this case, the answer is no. Counsel, can you just, if you were going to talk to somebody who's not a great expert in Louisiana law, what would be your best authority for this proposition that you've articulated that says, because you're supposed to be a champion, that it's more like indemnify than defend? What authority would you, if you say that the treatise is wrong, you say the case is not, what would be the best authority for this proposition that you have? Someone who's not so knowledgeable. I didn't mean to address this question specifically, but in our brief we have argued that the duty to defend and the duty to indemnify, there's a long line of jurisprudence from this court, from the United States. I know duty to defend and indemnify are different. I am very well aware of that. It's not my question. Which umbrella does duty to settle come into, indemnify or defend? And you say it comes into the indemnify umbrella side of the thing, not the defend. Where would you, and Judge Davis reads from a leading treatise that sounds like it comes from the defend side of the house. What authority do you have that it comes in the duty to indemnify side of the house? So, again, from an authority issue, I don't believe that this has actually been addressed. So there's no authority? I don't know if there's no authority, but I haven't seen it. I didn't know that this question would be pertinent. But, again, it comes down to almost a practical question. What does indemnification mean? It means pay money. Pay the plaintiff. What are you doing when you settle? You're paying the plaintiff. If the insurance company defends and wins, the plaintiff doesn't get anything. He's not paid. The defendant is not indemnified. In the settlement, the defendant is being indemnified through the funds and resources of the insurance company, and the plaintiff is receiving compensation. The duty to defend is simply to provide a legal defense, provide a lawyer, provide experts, pay court costs. And it's also a very specific coverage under this policy, and the policy is listed here. So even if the jurisprudence were to say that, it's not what Shelter said. In Shelter's policy, it has a listing of coverages, and it says coverage one, defense, coverage two, indemnification. They wrote the contract. I know the time is running short. Suppose we find that claim preclusion, assuming argument, we find claim preclusion does not apply here. But we think that issue preclusion would apply here. Do we need to send it back to the district court so that the district court can have you tee up and brief all the issue preclusion issues if we're determining that claim preclusion is not satisfied? I know that it was a complaint you had that the district court didn't give enough notice or something. So do we need to give you notice that it might be issue preclusion instead of claim preclusion, and do you need to get to go to the district court and talk about that, or do you think that the record is just clear that it's not issue preclusion and you win anyway? I think that the record is clear that it's not issue preclusion and that there's a sufficient law and evidence that's in the record. There's nothing that's going to be developed factually or legally if the case is remanded. The issue with issue preclusion is this. It comes back to the whole issue of what's the occurrence. I think we can all agree this wasn't a transaction, a business deal, a sale, a contract, a pledge. It was an occurrence, an event. When this court adopted the Matthews v. Blanchard standard in Belanger v. Geico, the court analyzed a 1973 claim as a tort. You were trying to determine what the applicable prescriptive period was, and you made a direct finding that it was a tort. So how do we determine when a tort occurs? The day of the event. Well, this court has also said that the day of the event for counting prescription is the day the judgment's entered, and therefore the occurrence was February 27, 2015, and therefore cannot be bound as the same transaction and occurrence under Paragraph 3. Secondly, there is zero, zero evidence that this case was actually litigated. When you look at the final judgment, there is very specific language that was very specifically included to prevent these kinds of confusions that seemingly is being overread. It is further ordered that, comma, with respect to the cross-claims of Paul Babbitt, for both claims that shelter one of the trial courts is very limited with respect to these claims, and we have also submitted the cross-claim of Mr. Babbitt. Not a single mention, not a hint, not an iota of excess judgment. It was limited to the duty to defend. Duty to defend. Correct. Duty to defend. And given the fact that Mr. Babbitt did not make that claim, nor was there any evidence, not a single bit of testimony, not a documentary evidence, nothing in the record supports that anyone at the court discussed the issue. In fact, Mr. Morrow's words are my best evidence that didn't happen. What we are here to argue today is the duty to defend because we've already indemnified. They admitted that, and they show how the indemnification is completely separate, different, and legal analysis, which is consistent with this Court's previous rulings on that point. And I will reserve the rest of my time. All right. Thank you. Mr. Morrow. Good morning, Your Honors. Good morning. May it please the Court. Today we are here to discuss res judicata in Louisiana, which involves both claim preclusion and issue preclusion, as this honorable court is well aware in requesting for the supplemental letter briefs from each party. I believe in 2011 the state legislature adopted language in the, quote, res judicata statute. I think it's 4321, 134321. I may have those numbers confused, but nonetheless. Adopted language that brought in the federal idea of collateral estoppel into Louisiana's idea of res judicata. So now in Louisiana it's very clear that we have both claim preclusion in Louisiana and issue preclusion. Now, this honorable court is correct. The duty to defend is a larger duty than the duty to indemnify in Louisiana or the duty to provide coverage. And the court has conclusively and my opponent has stipulated that Shelter has hands down prevailed in that there was no duty to defend Paul Babin arising out of this automobile collision and subsequent suit, this suit. But what is not being brought up here is that Babin in the initial lawsuit, this Paul Babin in the initial lawsuit filed a cross claim against Shelter that included, A, the duty to indemnify, B, the duty to defend, and C, misrepresentation. They threw it all out there. There was not a thing withheld and on that point, okay, so the case in its merits on liability and damages went to the court on in late September 2014 to October 1, 2014, and that was tried in front of a jury. And in that case, the court said that the act was intentional, but the damages were not intended, the extent of the damages were not intended from the standpoint of Paul Babin. And based on that ruling and Shelter's policy, the way Louisiana courts read that policy, it is clear that based on that ruling that the jury finding triggered or found coverage under the Shelter policy. Then you fast forward to December, much later after the trial, where there was a trial on the remaining issues in the cross claim of Paul Babin. And it was in that cross claim, duty to indemnify, duty to defend, and misrepresentation, that Paul Babin sought to hold Shelter accountable for all three of those things. They went for it in the underlying case after the trial on the merits had been held. Is this pertinent because you are going to say it doesn't matter whether you put it in the defend or indemnify bucket? Exactly. Okay. Not only that. Exactly. Yes, because Shelter – and the judge is very clear in its ruling that they said Shelter did not have a duty for coverage, they did not have a duty to indemnify, and they did not have a duty to defend, and they did not misrepresent. You see that in the oral reasons for judgment, which are clearly considered under Louisiana law, and you see that also in the written judgment where it says they dismissed the duty to defend,  and they said that Shelter did absolutely nothing wrong and dismissed all – Shelter paid its policy limit, though, didn't it? What's that? Shelter paid its policy limit. Yes, paid its policy limit. Without a duty to? Triggered by the jury trial's finding. But did Shelter have a duty to indemnify? That was conclusively found to be no. No, no, but you did indemnify. That's what I'm saying to the extent of your policy. Yes, after the jury's ruling and the way that they factually ruled on the case, yes. And that had already – you'd already paid when the ruling was made on a third-party demand, I take it? Correct. On the cross-claim. Cross-claim, yes. Yes, Your Honor. Yes, that had already happened, and subsequent courts have said and the district courts said that Shelter's decision to pay the policy limits and indemnify after the jury trial absolutely did not affect what duties it owed to Paul Babin, which was determined by the court. So the late Judge Brady determined that Shelter's and the – and I believe Judge Dick as well – determined that Shelter's actions after the jury trial on the merits to tender the policy limits per the judgment did not in all affect an analysis of the duty to defend and the duty to indemnify, which were clearly held by the district court to say that Shelter did not have that, based upon the facts of the case. And here's another issue, and here's another fact that is – Are we talking about the trial court decided that or the federal district court? The trial court, Your Honor. I have discussed so far with the trial court, except to mention what Judge Brady found, in that he ruled that Shelter's decision later to indemnify had no preclusive or waiver effect on whether or not Shelter had a duty to indemnify or defend in the merits of – in the case before trial. Yes, but I think the issue of preclusion here, if there is any, depends on what the trial court held. Yes, and here's the thing about issue of preclusion and the question of whether or not something was actually litigated. The question arose, what was actually litigated? I believe for claim preclusion under collateral estoppel, the issue must have been actually litigated. That's a factor. I think the factors are the issue at stake must be identical to the one involved in the prior action. We have duty to indemnify and duty to defend. The issue must have been actually litigated in the prior action, and the determination on the prior action must have been a necessary part of the judgment. Well, here's the evidence that it was actually litigated. The insured himself testified in that bifurcated trial. Under Louisiana, the duty to defend, if you look at the duty to defend, they call it the eight-corner analysis in Louisiana. That's where you look at the four corners of the policy, you look at the four corners of the petition, and you determine whether or not there could be a possibility of coverage. And if that's triggered, then the duty to defend is triggered. You don't have oral testimony of the insured. You don't ask him, quote, I believe, let me get the questions that were asked in the bifurcated trial. Did he pay his premiums on time? He testified to that. How he felt being denied by coverage by shelter. They were going for general damages on the duty to ‑‑ on shelter's alleged duty to indemnify, duty to defend. They asked Paul Babin to testify on how he felt that he was never contacted by shelter at all. Now, this is important, although it may seem like these are small questions asked of the insured, but for collateral estoppel, the federal case law, which can be considered, because Louisiana adopted the federal idea of collateral estoppel, the federal case law holds it does not ‑‑ actually litigated does not require a full-blown trial or opinion on the matter. It does not refer to the quality or quantity of argument or evidence addressed on the issue. And you need not establish that oral testimony or any particular type of testimony was presented. You just need to show that it was tried. And it's very clear that, A, in the cross-claim, he went for indemnity, the duty to indemnify, the duty to defend, and the misrepresentation. Then, at the bifurcated trial, there was evidence put on way beyond the duty to defend. They went for ‑‑ and out-of-counsel statements at the bifurcated trial were going for bad faith for all of it. So they went for the duty to indemnify, they went for the duty to defend, and they went for misrepresentation. The court, in its very strongly worded oral decision, stated that Shelter did absolutely nothing wrong, and there was no failure on any part of Shelter in the handling of this case, including there was no duty to provide coverage and no duty to defend. And then there was the written judgment. The written judgment dismissed all bad faith on the part of Shelter under 1892 and 1973, the two statutes for bad faith in Louisiana for insurance companies, and then separately dismissed the duty to defend against Shelter. So clearly that's all within the scope. And then, even to add to that, Paul Babin on appeal filed for the scope of the court's consideration or the state appellate court consideration, the duty to indemnify, the duty to defend, and the misrepresentation. And that was never successfully appealed by any party. The trial court's decision stood. What happened in the appeal appellate process? I forgot. The appellate process, the First Circuit, the Louisiana First Circuit Court of Appeal, said that Shelter did not have a duty to defend. It did not address. It didn't address the issue, but it had been part of the appellate filing? Yes, and Babin himself, it broke down into separate sections, Shelter's arguments, Plame's arguments, Babin's arguments. And in Babin, they just said they just addressed the duty to defend. They did not address he is trying to overturn the duty to indemnify. You didn't argue back to the Court of Appeals that you forgot this issue or something like that? That was not argued, no. Of course, it's understandable they didn't discuss the duty to indemnify. You paid out your policy limits. I think the more reasonable explanation for that is they found that there was no duty to defend, which is the greater duty, and therefore no duty to indemnify as well. If we were going to resolve this issue of which bucket you put it in, what is the best evidence or law that you have that it should go in the duty to defend bucket? The best evidence that I have that it should go in the duty to defend bucket, obviously I'm going to argue that no matter what bucket, those all have been— And you made that argument. I have. That's what you earlier said. But if I was forced, which I'm being forced now, if I was forced to put it in the duty to defend bucket— Do you have authority for that? I do. Louisiana case law clearly holds that it's the greater duty. If you do not have a duty to defend, it logically holds that you do not have a duty to indemnify. It's a greater duty— Even though they're separately analyzed. And you can't have a—so you're saying you can't have a duty to indemnify without the defend? I'm saying that the duty to defend is a greater duty, sort of like a Venn diagram. It's a bigger circle. And indemnify is fully within the circle? I believe so. There's no indemnify that's in a kind of weird situation where you don't have the duty to defend? That has not been addressed under Louisiana law as far as I can tell. Okay. But it is—I mean, it's our stance that, yes, it is a greater duty and it's assumed. And it's assumed completely within that other duty? Right. Okay. Even though they say they're separate? Correct. Okay. The next question I have is, assuming arguendo—well, no, I'm not going to ask you. Assuming arguendo, it seems that this may be issue rather than claim preclusion. Do you have a thought on that? Do I have a thought on that? My argument for—issue preclusion seems very clear to me. So you're arguing both? I'm arguing both. Yes, Your Honor. But the court found claims, right? Correct. But it's interesting when you go back and look at it. I believe because the statute says res judicata under 4231, I believe. It's titled res judicata. But it has two and three in it. If you look back at Judge Shelley Dick's final ruling, the one that ruled the motion for summary judgment for Shelton dismissing the excess judgment claim, if you look at it, she actually cites two and three in her ruling, stating that she has considered both two and three in the— she's both considered issue preclusion and claim preclusion. I believe the confusion arises because it's under the same heading under Louisiana law, even though Louisiana has clearly adopted, since 2011, lateral estopolis, part of its res judicata statute. But claims preclusion is a problem because of the transaction recurrence being the same. Because of the temporal aspect of it. You agree with that, right? I believe that this is an interesting case because if you— and this is the argument for a res judicata applying that Shelter maintains. The jury trial was tried in time before the bifurcated hearing was tried. So the excess exposure was clearly on the record prior to the bifurcated trial. And therefore, it is Shelter's argument that both apply. Both res judicata and collateral estopolis apply in this case, barring plaintiff's present claims. You mean claims and issue preclusion? Claim and issue preclusion. But you agree, though, that it's much more difficult to say it's the same transaction or occurrence, given the temporal issues. I will say that the fact pattern of this particular case is different. Is what? Is different than you would normally find because you do not normally have that temporal aspect where you try the— The temporal kind of defeats the claims preclusion, doesn't it, counsel? I'm going to say the issue preclusion, I believe, is the stronger of the two arguments. Sometimes candor is the better part of valor, an oral argument. The temporal issue is obviously an issue, Your Honor. Is an issue? Yes. Okay. It's obviously an issue in this case, given when the judge— I don't know how you'd even mention claim preclusion, but you've got issue preclusion. I mean, why would you even argue claim preclusion? Well, why was it argued claim preclusion? Yeah. Because under Louisiana law, the statute for res judicata is the same as issue and claim preclusion. Well, you've got—there's a difference in claim preclusion and issue preclusion, but I mean— The question was just as a practical matter, why you are so fiercely hanging on to arc and, you know, both. I think that's really the question, but I guess you don't want anybody to say for some future case that they've got the tape of you conceding this issue for all purposes. And the idea that Shelter has, quote, waived defenses along the way has been raised at multiple points and stages in this case. Shelter is not waiving any particular argument in the course of this oral argument, although it does acknowledge or counsel acknowledges the theoretical issues that you raise concerning claim preclusion. Do we need to send it back to the district court, or do you believe that the district court considered both? I believe that the district court considered both. I believe that in the scope of the court's ruling, it considered this to be under both issue and claim preclusion. It voiced it as res judicata, but clearly the thinking and the reasoning of it is also takes into account issue preclusion as well. So I don't think that it needs to go back to the district court. I believe that the district court's ruling should be affirmed. Yes, Your Honor. All right. Is the plaintiff's name Robin or Roban? Came out of St. Martin Parish. Sounds like Roban to me. Came out of St. Martin Parish, didn't it? It did. Roban would be my guess given the locale. Okay. And given that Roban clearly gives it some indication that the duty to defend drives the duty to settle a claim, that makes sense. Because in any coverage case, you're going to have a necessarily difference of stance between what the insurance company is going to state and put forward for coverage and what the insurer is going to put forward for coverage because under a coverage case like this one, they're adversarial by nature. And so therefore, the duty to defend necessarily means that the two interests are aligned. And so that's when the duty to settle comes in is that when you have that sort of fiduciary duty to not expose the insurer to and to settle the case given the factors of the case that does not apply in this case where Shelter had no duty to defend. All right. Mr. Morrow, I believe we have your argument. What's that? I believe we have your argument. Thank you, Your Honor. Thank you, sir. All right. Mr. Hawkins, any rebuttal? I want to address a couple of things. I believe there's some misunderstandings and perhaps some misrepresentations of the judgment. First of all, Judge Kelly did not find that there was no coverage. Louisiana revised statute 22-1269, we call it the direct action statute, says that an insurance company can only be found jointly and in solido liable with an insured if the policy provides coverage within those limits. First paragraphs of the judgment. Shelter is hereby ordered the judge to decree to be jointly and in solido liable with Paul Babbitt in the amount of $500,000 up to the policy limits. That is the clear ruling of the court. I understand Judge Kelly had some off-the-cuff comments. Those off-the-cuff comments, though, as we have articulated to this court in our letter brief, are barred for consideration because of Louisiana Code of Civil Procedure Article 1918. The Louisiana Supreme Court has said on numerous occasions, adopted by every single court of appeal, that the written or oral reasons for a judgment are merely an explanation of the trial court's determination. They in no manner alter, amend, or affect the final judgment appealed. Where there is a conflict between what the trial judge has said and the written judgment, the written judgment controls. What about the dismissal of the cross-claim? Well, again, the cross-claims were very limited, okay? Again, some misrepresentation about what Paul Babbitt said. You have the cross-claim in front of you. The cross-claim was limited to failure to defend, asking for indemnification, which they did then do, which was withdrawn, and then for misrepresentation of policy coverages. But Mr. Babbitt lost those two claims, and we're not making those two claims. But you lost the issue of duty to defend on that cross-claim, didn't you? Mr. Babbitt did, and this is, again, where I think there are some misstatements of the law. Mr. Morrow has continually told you it is a greater duty. That is not what the law says. Every single case uses this word, a broader duty. It is easier to trigger the duty to defend than it is the duty to cover or the duty to indemnify. And again, Shelter drafted its own insurance policy. This Court is well aware that when interpreting a contract, we interpret it in favor of the insured and against the insurer, and they chose to list these duties separately under their policy. This issue was fully briefed to the District Court. I would have briefed it here. I thought we were more looking about issue preclusion, and I want to quickly address that before we go. Louisiana law does not have a whole lot of jurisprudence under Paragraph 3, okay? But all of the jurisprudence that does exist says the same thing. The seminal question is whether it arose out of the same transaction or occurrence. For Paragraphs 1 and 2, what we're going to do is we're going to look at whether the cause of action existed at the time. That's the phraseology that's used in the statute. And for Paragraph 3, the phraseology was, was it actually litigated and determined if the determination was necessary for the principal judgment? The closest case that I could find, which is in our supplemental brief, was Goodman v. Spillers. And in that particular case, the court was looking at a malicious prosecution claim. And there was filings back and forth between the initial parties. Ultimately, Mr. Goodman files a malicious prosecution claim. The defendants filed res judicata. Analyzing it specifically under issue preclusion, one of the issues that the court really focused on was, what do you need to prove in the subsequent case? And in a malicious prosecution claim, as this court knows, the first element is a bona fide termination of the litigation in your favor. You may not prosecute that claim until that happens. What is the seminal event in an excess judgment? A judgment in excess of the policy. You cannot litigate this. Mr. Morrow said, oh, it was over in September. Mr. Morrow must have forgotten that he could have filed a JNOV, asking the judge to set aside. He could have filed a motion for a remitter. In fact, a motion for additor was filed and granted, and so the number of the judgment changed. He also may have taken an appeal. When this court analyzed the Belanger case, they said very specifically, hey, we would have done this differently had it been a suspensive appeal. But it wasn't. It was a devaluative appeal. So now we have a final judgment. Nobody knew what the final judgment would be until the post-trial delays had run. So the earliest date that it could be was the day that Judge Kelly put pen to paper, February 27th. But I want to leave the Court with this. The language in Goodman v. Seller is very clear. It is generally not sufficient for purposes of issue preclusion to simply prove that a party in prior litigation argued numerous issues and lost its cause. Issue preclusion requires that the issue to be precluded have been specifically dispositive issue, which the prior court must have specifically considered in a contest between the same parties in the same capacities. That did not happen here. Issue preclusion does not apply. Thank you. Great. Thank you, Mr. Hawkins. Thank you to both counsel for your briefing and argument. In this case, it will be submitted along with the others, both argued and non-orally argued that we've had this week. This concludes the work of the panel, and we stand adjourned.